UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In re ) | |
| ) | |
| Victor Anthony DeSantis, ) | Case No. 6:07-bk-3840-KSJ |
| Dana Jo DeSantis, ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| ) | |

MEMORANDUM OPINION
DENYING CREDITOR'S MOTION TO STRIKE
AND PARTIALLY GRANTING MOTIONS FOR SANCTIONS

In this consumer Chapter 7 bankruptcy case, the Community Educators' Credit Union asks this Court to strike pleadings filed by the debtors' lawyer, Lawrence Kenkel, and to sanction Kenkel and his law firm, Volk Law Offices, P.A.[1] (the "Law Firm"), for unprofessional conduct (Doc. Nos. 24, 33, 47 and 48). The dispute and allegations of professional misconduct arose in connection with negotiations relating to the debtors' reaffirmation[2] of a cross-collateralized debt obligation they owed to the Credit Union.

On August 27, 2007, the Law Firm filed this Chapter 7 bankruptcy case on behalf of the debtors, Mr. and Mrs. DeSantis. In their Disclosure of Compensation, the Law Firm confirmed that the debtors paid $1,850 for legal services, which specifically included the "preparation and filing of reaffirmation agreements" (Doc. No. 1). The Law Firm, however, failed to help the debtors negotiate the reaffirmation agreement proposed by the Credit Union. Rather, the debtors,

---

[1] Three attorneys for the Law Firm worked on the debtors' case. Thomas J. Herbert filed the debtors' bankruptcy petition and associated schedules and disclosure of compensation. Later in the case, counsel for the Credit Union, Chip Trimmier, communicated with two other attorneys, Kenkel and David Volk.

[2] A reaffirmation agreement is an agreement between a debtor and a secured creditor that the debtor can retain collateral securing repayment of a loan and continue making monthly payments in exchange for agreeing that the debt will survive the bankruptcy discharge. A reaffirmation agreement may or may not contain the same terms as the parties' pre-petition agreement. If a debtor defaults on the terms of a reaffirmation agreement, such as by missing payments, the secured creditor can repossess the collateral, usually a car, and seek to collect the remaining balance due from the debtor. Debtors and their attorneys must closely review reaffirmation agreements to insure that reaffirmation of a debt is in the best interests of the debtor. Often, reaffirming a debt is a poor financial choice.

for unexplained reasons, endeavored to represent themselves in negotiations with the Credit Union. The primary issues raised by the Credit Union's motions are whether the Law Firm's breach of its professional responsibilities caused the Credit Union to incur unnecessary fees and costs and whether the Law Firm's pleadings should be stricken.

The debtors owe the Credit Union on two car loans and one unsecured line of credit.[3] The debts are cross-collateralized. The debtors initially indicated in their Statement of Intentions (Doc. No. 1) that they intended to reaffirm the debts encumbering their cars. Given that the debtors owe a total amount of approximately $54,000 to the Credit Union, that the three loans are cross-collateralized, and that the cars are valued at only $32,750, leaving a negative equity in the cars of $21,250, reaffirmation always appeared a poor financial decision. The debtors perhaps hoped the Credit Union would agree to allow them to reaffirm *only* the debt for the cars but not the unsecured loan. The Credit Union justifiably refused the debtors' offer of a partial reaffirmation and insisted that the debtors reaffirm *all* of the debts, including the unsecured loan, if they wanted to keep the two cars.[4]

On October 4, 2007, the Credit Union's attorney, Chip Trimmier, sent a reaffirmation agreement to the Law Firm. At some point, the debtors either unilaterally determined they would represent themselves with respect to the Credit Union's proposed reaffirmation or an attorney for the Law Firm informed the debtors that the Law Firm would not represent the

---

[3] The Credit Union holds a lien on the two cars—a 2004 Corvette valued at $28,250 and a 2002 Tracker valued at $4,500. The debt on the two cars is approximately $33,000 for the Corvette and $6,300 for the Tracker. In addition, the debtors owe the Credit Union $14,718.34 on the cross-collateralized, unsecured line of credit.

[4] The Credit Union's position is fully supported by case law. See, e.g., In re Casenove, 306 B.R. 367, 371-372 (Bankr. M.D.Fla. 2004)("[p]artial reaffirmations are not permitted where multiple loans are secured by the same collateral by virtue of a pre-petition security interest or a security agreement containing a cross-collateralization clause.") (citing Matter of Brady, 171 B.R. 635, 636-37 (Bankr. N.D.Ind. 1994); In re Briggs, 143 B.R. 438, 445-46, 460 (Bankr.E.D.Mich.1992) ("credit union's refusal to accept a partial reaffirmation was not improper where debtor granted a credit union a security interest in his shares as a part of the security agreement he executed with the credit union in connection with a loan on a mobile home"); In re James, 120 B.R. 582, 586 (Bankr.W.D.Okla.1990) ("debtors have no right to compel a creditor to accept a partial reaffirmation of an undersecured indebtedness")).

debtors in connection with the reaffirmation.[5] The Law Firm never explained why the debtors would choose to represent themselves in these somewhat questionable and difficult reaffirmation negotiations when the debtors already had paid the Law Firm for this service. What is certain is that the Law Firm failed to help the debtors in their negotiations with the Credit Union.

On October 12, 2007, the debtors wrote to the Credit Union's lawyer stating that they were not represented for the purposes of reaffirming their debts to the Credit Union. They rejected the Credit Union's proposal that they reaffirm the entire cross-collateralized debt and made a counter-offer to reaffirm only the two car loans. The debtors further stated that, if the Credit Union rejected their counter-offer, they would "arrange for the surrender of [the cars] in accordance with the directions of the Credit Union." (Doc. No. 18, Exh. A; Debtors' Ex. No. 1).

Trimmier, the Credit Union's attorney, upon receiving the debtors' letter, understandably was reluctant to communicate directly with the debtors in light of Florida Rule of Professional Conduct 4-4.2, which prohibits communication between an opposing lawyer and a represented party. A comment to Rule 4-4.2 specifically states that "[t]he rule applies even though the represented person initiates or consents to the communication." On October 26, 2007, Trimmier sent a revised reaffirmation agreement to the Law Firm and requested, if appropriate, the firm's consent to allow him to talk directly with the debtors if indeed they now were unrepresented (Doc. No. 24, Ex. A).

At this point, a series of correspondence was exchanged between the Law Firm, the debtors, and Trimmier, summarized in the chronology attached as Appendix A. The Court concludes, however, that the Law Firm *never* responded to Trimmier's request to directly talk to the debtors. Instead, on November 3, 2007, the debtors, not their lawyers, again wrote Trimmier requesting that he contact them directly to "make the appropriate arrangements to have these

---

[5] In one letter, Kenkel represented to Trimmier that the debtors were representing themselves in connection with reaffirming the debts owed to the Credit Union (Doc. No. 24, Exh. E). On another occasion, Volk stated the debtors were "choosing to represent themselves with respect to reaffirming debts owed to the Credit Union." (Doc. No. 18).

vehicles surrendered in accordance with our bankruptcy proceedings" (Doc. No. 18, Exh. B; Debtors' Ex. No. 2). If the Law Firm had provided the services that it initially agreed to provide to the debtors and worked directly with the Credit Union, none of the later threats, motions, and unnecessary costs would have resulted.

After waiting over a month for the Law Firm to give Trimmier permission to communicate directly with the debtors, on or about December 10, 2007, the debtors called Ms. Carpentier, a non-lawyer representative of the Credit Union. Ms. Carpentier, in her affidavit, said Mr. DeSantis "expressed extreme anger about the proceedings" (Doc. No. 54). The debtors, however, agreed to promptly surrender the cars to the Credit Union, and Ms. Carpentier gave them detailed instructions. The debtors failed on this promise, however, eventually returning the cars to the Credit Union almost one month later on January 7, 2008.

In the meantime, on December 7, 2007, Trimmier filed a Motion to Dismiss the debtors' bankruptcy case pursuant to Bankruptcy Code[6] Sections 105[7] and 707(a)(1)[8] and an associated legal memorandum arguing that dismissal was appropriate because the debtors failed to perform duties required by Bankruptcy Code Section 521 (Doc. Nos. 15 and 16).[9] Bankruptcy Code Section 521 charges debtors with certain duties. Among other duties, debtors are required to file a statement of their intentions with respect to their secured debt obligations within thirty days of the petition date or on or before their Section 341 meeting of creditors, whichever is earlier.[10] 11 U.S.C. § 521(a)(2)(A). Within thirty days after the first date set for the meeting of creditors, with

---

[6] Unless otherwise stated, all references to the Bankruptcy Code herein shall refer to Title 11 of the United States Code.

[7] Bankruptcy Code Section 105 provides the court with the power to, among other things, "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of Title 11.

[8] Bankruptcy Code Section 707(a)(1) provides that the court may dismiss a case under this chapter only after notice and a hearing and only for cause, including unreasonable delay by the debtor that is prejudicial to creditors.

[9] On that same day, Trimmier drafted a letter to the Law Firm again asking permission to communicate directly with the debtors.

[10] The debtors timely filed the required Statement of Intentions on the petition date, August 23, 2007.

certain exceptions, debtors must perform their stated intentions with respect to the property, i.e., reaffirm, redeem, or surrender the property. 11 U.S.C. § 521(a)(2)(B). Bankruptcy Code Section 521(a)(6), somewhat inconsistently, provides that individual debtors in Chapter 7 cases shall not retain possession of personal property as to which a creditor has an allowed purchase money security interest unless the debtor, no later than 45 days, as opposed to 30 days, after the first meeting of creditors, enters into a reaffirmation agreement for the property pursuant to Section 524(c)(1) or redeems the property pursuant to Section 722.[11]

By any calculation, the debtors' time to reaffirm the debt to the Credit Union had expired before the Motion to Dismiss was filed. The Eleventh Circuit Court of Appeals has explicitly held that Bankruptcy Code Section 521(a)(2) does not permit a Chapter 7 debtor to retain collateral without redeeming the collateral or reaffirming the debt. In re Taylor, F.3d 1512 (11th Cir. 1993); In re Cornejo, 342 B.R. 834 (Bankr.M.D.Fla.2005). "Where the debtor decides not to reaffirm, or the parties cannot negotiate a reaffirmation, or redemption is not economically feasible, the debtor has but one option: 'surrender' the collateral." In re Pratt, 462 F.3d 14, 18 (1st Cir. 2006). Certainly, such was the case here.

Exactly one month after Trimmier filed the Motion to Dismiss and long after the statutory time period to surrender the cars had expired, the debtors surrendered their vehicles to the Credit Union on January 7, 2008. Trimmier withdrew the Motion to Dismiss the very next day, resolving all issues raised by the motion (Doc. No. 23). The debtors, albeit belatedly, performed all required actions under the Bankruptcy Code. The remaining issues are whether the Law Firm acted professionally and, if not, whether the Court should award sanctions to the Credit Union for any extra costs or fees the Credit Union incurred as a result of the Law Firm's actions or strike the Law Firm's pleadings.

---

[11] The debtors' first meeting of creditors was held on October 2, 2007. Using the statutory period of 45 days for the debtors to choose to reaffirm or redeem the debt, the period expired on November 21, 2007, long before the Credit Union filed its Motion to Dismiss.

The Credit Union asserts in its Amended Motion to Strike and Motions for Sanctions (Doc. Nos. 33, 47 and 48) that the Law Firm acted unreasonably and vexatiously by unnecessarily increasing the costs and attorney fees incurred by the Credit Union. The Credit Union has two primary objections. First, the Law Firm never consented to direct communication between attorneys for the Credit Union and the debtors, which made the resolution of this dispute substantially more difficult. Second, the Law Firm's responsive pleadings (Doc. Nos. 18, 27, 29, 49, 50, and 51) contained defamatory, scandalous and impertinent statements that were meritless and unsupportable, but which, once made, unnecessarily increased the cost of litigation in this relatively simple matter. The Credit Union asks the Court to strike the debtors' responses and seeks the reimbursement of their fees and costs.

In response, the Law Firm does not dispute the facts, as such, but paints a different picture as to the Credit Union's motive. The Law Firm argues that Trimmier *was* given clear authorization, *by the debtors*, to communicate directly with them and simply failed to work with them to timely arrange for the surrender of the debtors' cars in order to pressure them into reaffirming an unfavorable series of loans. The exact wording used by the Law Firm is that the Credit Union was trying to "bully the debtors into reaffirming debts which they no longer desire." (Doc. No. 18).

The Credit Union observes, and the Court agrees, that this entire dispute was unnecessary and easily avoidable if the Law Firm had simply performed the legal services it originally agreed to provide—to represent the debtors on their reaffirmation agreements. "The Bankruptcy Code and Federal Rules of Bankruptcy Procedure establish standards of professional conduct for attorneys for chapter 7 debtors with regard to certain matters." In re Egwim, 291 B.R. 559, 563, n.2 (Bankr.N.D.Ga.2003). Specifically, Bankruptcy Code Section 329 and Rules 2016 and 2017 of the Federal Rules of Bankruptcy Procedure give bankruptcy courts the "power and obligation to determine the services that an attorney for a debtor must perform in order to be entitled to a reasonable fee. Moreover, courts have the inherent power to regulate the conduct of attorneys

who practice before them." Egwim, 291 B.R. at 563, n.2 (citing In re Castorena, 270 B.R. 504 (Bankr.D.Idaho 2001); In re Bancroft, 204 B.R. 548 (Bankr.C.D.Ill.1997)). As explained by the Bankruptcy Court for the Northern District of Georgia:

> Absent a valid, professionally appropriate contractual limitation on the scope of services between attorney and chapter 7 debtor . . . the lawyer is engaged to provide services in the bankruptcy case, and the lawyer is obligated to represent the client in all matters, including any discharge or dischargeability litigation, unless and until grounds exist for the attorney's withdrawal under applicable professional standards. . . [E]ven if the attorney may properly limit the scope of the engagement, the attorney nevertheless is obligated to represent the client in the bankruptcy case unless and until permitted to withdraw by the court.

Egwim, 291 B.R. at 570 (citing local rule and other Georgia bankruptcy cases).

Local Rule of the United States Bankruptcy Court for the Middle District of Florida 9011-1 (the "Local Rules")[12] additionally governs the duties of attorneys who file a petition on a debtor's behalf and provides that "[u]nless allowed to withdraw from a case…by order of the Court… counsel filing a petition on behalf of a debtor shall attend all hearings scheduled in the case or proceeding at which the debtor is required to attend." Local Rule 2091-1 further provides that an attorney who files a petition for a debtor cannot thereafter withdraw from the case "except by written leave of Court obtained after giving ten (10) days' notice to the party or client affected thereby, and to opposing counsel."

Attorneys representing individual debtors in consumer cases filed under Chapter 7 of the Bankruptcy Code have certain essential duties they must perform.  They must help debtors file the necessary petition, schedules, statements, and pleadings.  They must attend the scheduled meeting of creditors.  Most relevant here, attorneys representing consumer debtors must advise

---

[12] Local Rule 1001-1(e) of the United States Bankruptcy Court for the Middle District of Florida provides that the Rules for the United States Bankruptcy Court for the Middle District of Florida shall be cited as "Local Rules."

and assist their clients in complying with their responsibilities assigned by Section 521 of the Bankruptcy Code, including helping their clients decide whether to surrender collateral or instead to reaffirm or to redeem secured debts. This obligation is one of a debtor's attorney's primary and essential responsibilities, particularly after the passage of the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act, which made the decision more difficult and more complicated. If a hearing is scheduled on a reaffirmation agreement, the attorney must attend the hearing with his or her clients. If an attorney cannot perform these necessary duties, the attorney should not accept bankruptcy cases.

Individual debtors, often unfamiliar with legal terminology and the potentially negative consequences of reaffirming a debt, greatly benefit from informed advice in making their decision and need assistance when, as here, the reaffirmation decision is not straightforward. A debtor who reaffirms a secured debt agrees to repay that creditor over time. Once a debt is reaffirmed, if the debtor is unable to make the regular monthly payments, the debtor is liable for the return of the collateral as well as the repayment of the remaining deficiency balance due. For debtors who consider reaffirming debts associated with collateral valued at far less than the debt, such as the debtors in this case, the decision to reaffirm may be a poor choice. Attorneys must explain the rules and assist debtors in making good decisions, even if it requires giving up treasured cars or other property.

In a typical case, debtors' attorneys regularly advise their clients of their obligations, review reaffirmation agreements, assist their clients in completing such agreements or in making other arrangements, and, in sum, work with their clients to ensure compliance with Section 521 of the Bankruptcy Code. On more frequently occurring occasions, courts set hearings on questionable reaffirmation agreements to determine whether or not they are in the best interest of the debtor. If a hearing is set, debtor's attorneys attend the reaffirmation hearing with their clients.

If an attorney believes that he or she should not or cannot represent a debtor in a reaffirmation decision or if unusual circumstances exist, the attorney must give at least ten (10) days notice of his or her intent to withdraw from representation pursuant to Local Rule 2090-1. In most cases, if not all, the attorney must *totally* withdraw from all further representation of the debtor. The Court likely would require a disgorgement of all or a substantial portion of the attorney's fee inasmuch as the debtor is not receiving agreed and necessary legal representation. Upon withdrawal, the debtor can choose to hire a new attorney or act pro se. A debtor's attorney simply cannot delegate a portion of his professional responsibility, as the Law Firm did in this case in negotiating the reaffirmation agreement with the Credit Union, and continue to represent the debtor in other parts of the same case, such as by filing the numerous responses to the Credit Union's motions. See, e.g., Hale v. U.S. Trustee, 409 F.3d 1139 (9th Cir. 2007) (attorney sanctioned for performing only some of the mandatory duties required to represent Chapter 7 debtors).

Here, the Law Firm did not follow these rules. The Law Firm initially agreed to represent the debtors in their reaffirmation negotiations and accepted $1,850 for their services, as reflected in the Disclosure of Compensation (Doc. No. 1). Yet, when the debtors needed to make an informed decision relating to the debts they had with the Credit Union, the Law Firm failed to represent the debtors. The Law Firm never adequately explained why the debtors either chose or were forced to represent themselves in the negotiations. The Law Firm also did not seek to withdraw from the case. Instead, the Law Firm created a state of limbo where the Credit Union's attorney understandably did not know who to contact about what. The debtors were frustrated and unassisted. As Ms. Carpentier stated, "Mr. DeSantis expressed extreme anger about the proceedings." (Doc. No. 54). The Law Firm could have avoided all of the resulting problems if it had simply done the job it was paid and required to do.

Attorneys who agree to represent a debtor must provide the agreed services unless and until the Court allows withdrawal. Because of the unnecessary trouble and confusion caused by

the Law Firm's actions and because of the overall importance of insuring that debtors are properly represented, the Court finds it appropriate to strictly enforce the requirements of these rules which govern and regulate attorneys' duties and responsibilities.

The Court further observes that, even if the Law Firm failed to properly represent the debtors, the dispute still was avoidable if the Law Firm had *unambiguously* consented to allow the Credit Union's counsel to communicate directly with the debtors.  Rule 4-4.2(a) of the Florida Rules of Professional conduct provides:  "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, *unless the lawyer has the consent of the other lawyer*." (emphasis added). The comment to the rule states: "*The rule applies even though the represented person initiates or consents to the communication*."  (emphasis added). Therefore, even if the debtors requested to talk directly to Trimmier, Trimmier *had* to refuse unless and until the Law Firm consented to the direct communication.

Trimmier asked at least twice for permission to communicate directly with the debtors on the reaffirmation and surrender issues (Doc. No. 24, Exhibits A and B).  The Law Firm, however, never clearly consented.  Indeed, the Court would find that the Law Firm intentionally obfuscated the matter in a letter dated December 13, 2007, stating: "[T]his office does not represent the Debtors with respect to the reaffirmation agreement.  Therefore, our consent is neither necessary nor relevant and, therefore, is not forthcoming.  This office does, however, represent the debtors for purposes of responding to your Motion [to Dismiss]." (Doc. No. 24, Exhibit E). Based on this non-consent, Trimmier theoretically could talk directly to the debtors only about the reaffirmation agreement, but not about the surrender of the cars or any issue raised by the Credit Union's Motion to Dismiss, which was filed specifically because the debtors did not sign a reaffirmation agreement or otherwise timely comply with their duties assigned by Section 521.  The Law Firm simply did not provide the debtors with the required representation and never gave their consent to allow Trimmier to talk to the debtors.  The Credit Union seeks

sanctions against the Law Firm for the unnecessary expenses they incurred in this case as a result of the Law Firm's actions. The Court agrees sanctions are appropriate.

Courts have the inherent power to control and discipline legal practitioners and can fashion appropriate sanctions including assessing attorney's fees "where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." In re Mroz, 65 F.3d 1567, 1574 (11th Cir. 1995) (internal citations omitted). Additionally, Section 105(a) of the Bankruptcy Code and Local Rule 9011-3 allow a bankruptcy court to award sanctions in appropriate circumstances. Specifically, Section 105(a) of the Bankruptcy Code allows a Court to enter any order necessary to enforce or implement court orders or rules. Local Rule 9011-3 provides that the Court may impose sanctions, including the striking of pleadings or other submissions, for failing to follow the requirements of the Local Rules.

The attorneys at the Law Firm failed to follow the Local Rules. They denied legal representation to their clients without first seeking to withdraw as required by Local Rule 2090-1. They failed to respond to the Credit Union's legitimate requests to directly talk to the debtors. They made a bad situation much worse by the vituperative pleadings they filed in response to the Credit Union's motions. Rather than do its job, they caused the Credit Union to expend unnecessary legal fees and costs to respond to the Law Firm's antics.[13]

In determining the proper amount of sanctions to award, the Court needs further information from the Credit Union. First, the Court needs to ascertain the normal fee the Credit Union pays its attorneys for a routine reaffirmation agreement. Second, the Court needs information on the amount the Credit Union actually paid for attorney fees and costs in this case, together with the invoices and supporting billing statements submitted to them by Trimmier. The

---

[13] The Credit Union also seeks sanctions against the Law Firm under Federal Rule of Bankruptcy Procedure 9011 and 28 U.S.C. 1927 (Doc. Nos. 47 and 48). The Court declines to award additional sanctions under these alternative provisions.

Credit Union is directed to file an affidavit containing this information on or before **October 3, 2008**. The Law Firm may file a response on or before **October 17, 2008**. The Court will consider the assessment of fees based on the written submissions without further hearing and then will enter an appropriate order.

Lastly, the Credit Union asks the Court to strike the Law Firm's responsive pleadings (Doc. Nos. 18, 27, 29, 49, 50, and 51). Federal Rule of Civil Procedure 12(f) provides the standard for striking pleadings. A court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although courts have broad discretion in determining whether to grant a motion to strike, Royale Green Condominium Ass'n., Inc. v. Aspen Specialty Ins. Co., No. 07-21404-CIV, 2007 WL 2479589, at *1 (S.D. Fla. Aug. 28, 2007) (citing Anchor Hocking Corp. v. Jacksonville Elec. Auth., 419 F.Supp. 992, 1000 (M.D.Fla.1976)), it is well established that striking pleadings is a drastic remedy and is appropriate only sparingly when justice so requires. Royal Green, 2007 WL 2479589, at *1 (citing Augustus v. Bd. of Public Instruction of Escambia County, Fla., 306 F.2d 862, 868 (5th Cir.1962)).[14] The Court acknowledges that many statements in the Law Firm's pleadings are redundant (for example, the Law Firm repeatedly stated, incorrectly, that Trimmier should have directly contacted the debtors to negotiate the reaffirmation agreement (e.g., Doc. Nos. 18, 24, and 27)) or impertinent (e.g., the Law Firm threatened to seek sanctions against the Credit Union (Doc. No. 18)). Other portions of the Law Firm's responses were merely lacking in civility.

Striking the Law Firm's pleadings however would serve no purpose and have no substantive effect in this case. If a court strikes an Answer to a Complaint, a default is entered. If a court strikes a response to a discovery request, sanctions can lie. In these two examples, the consequences of striking pleadings are tangible and concrete. In this case, striking the Law

---

[14] Pursuant to Bonner v. Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981), all decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

Firm's responsive pleadings would be merely symbolic. Because striking pleadings is generally disfavored and because it would not accomplish anything, the Court declines to exercise its discretion in this regard. The Credit Union's Amended Motion to Strike is denied (Doc. No. 33).

The Credit Union's Motions for Sanctions (Doc. Nos. 47 and 48) are partially granted, pending receipt of the Credit Union's requested affidavit and a final order. A separate order consistent with this Memorandum Opinion shall be entered.

DONE AND ORDERED on September 10, 2008.

KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies provided to:

Debtors: Victor Anthony DeSantis, Dana Jo DeSantis, 1513 Laramie Circle, Melbourne, FL 32940

Debtors' Attorney: David J. Volk, Volk Law Offices, PA, 700 South Babcock Street, Suite 402, Melbourne, FL 32901

Community Educators' Credit Union, c/o Chip Trimmier, Trimmier LLC, P.O. Box 1885, Birmingham, Alabama 35201

Trustee: Marie E. Henkel, 3560 South Magnolia Avenue, Orlando, FL 32806

U.S. Trustee, 135 W. Central Blvd., Suite 620, Orlando, FL 32801