UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| Victor Anthony DeSantis, | ) | Case No.  6:07-bk-03840-KSJ |
| Dana Jo DeSantis, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| | ) | |

MEMORANDUM OPINION
DENYING DEBTORS' MOTION FOR RECONSIDERATION,
DENYING CREDITOR'S MOTION FOR DISQUALIFICATION, PARTIALLY
SUSTAINING OBJECTION TO FEES AND COSTS,
AND AWARDING FEES AND COSTS

In an earlier decision (Doc. Nos. 61 and 62), the Court awarded sanctions in an undetermined amount to the Community Educators Credit Union ("CECU") to compensate CECU for attorney fees and costs it otherwise would pay to their attorney, Chip Trimmier, for services incurred in this case as a result of the actions taken by debtors' counsel, the Volk Law Offices ("VLO").  In order to assist the Court in determining the amount of the sanctions, CECU has filed an affidavit and Mr. Trimmier's invoices requesting attorney fees of $17,905.62 and expenses of $650.93 (Doc. No. 71).

VLO objects to the amount of the attorney fees and requests time for additional discovery and a further evidentiary hearing (Doc. No. 81). VLO also has filed a motion seeking reconsideration of the Court's initial ruling (Doc. No. 65).  In response, CECU has moved to disqualify VLO from any further representation of the debtors in this case (Doc. No. 78).

The Court concludes that these on-going disputes between opposing counsel must end with this order. The Court will not reconsider its prior ruling; however, it also will not award the full amount of attorney fees sought by CECU, finding them unreasonable and excessive. Disqualification of VLO also is not required.

<u>Reconsideration is Not Merited</u>

VLO argues that the Court should reconsider its prior ruling because, first, VLO did not anticipate that the adequacy of its representation of the debtors was at issue, and, second, that CECU improperly filed a motion to dismiss the debtors' bankruptcy case (Doc. No. 15). Only three reasons justify reconsideration of a prior ruling: (1) a change in controlling law; (2) newly discovered evidence; or (3) a clear error of law or fact that results in manifest injustice.  <u>In re Kellogg</u>, 197 F.3d 1116 (11th Cir. 1999); <u>In re Barber</u>, 318 B.R. 921, 924 (Bankr. M.D. Ga. 2004); <u>In re Investors Florida</u>, 168 B.R. 760, 768 (Bankr. N.D. Fla. 1994).

Because VLO timely filed its motion for reconsideration[1] within 10 days of the issuance of the Memorandum Opinion (Doc. No. 61), the Court will construe the request as a motion to alter or amend a judgment pursuant to Rule 59(e).[2]  <u>In re Mathis</u>, 312 B.R. 912, 914 (Bankr. S.D. Fla. 2004) (<u>citing</u> <u>Hatfield v. Board of County Commissioners</u>, 52 F.3d 858 (10th Cir. 1995); <u>accord</u> <u>Mendenhall v. Goldsmith</u>, 59 F.3d 685 (7th Cir.1995); <u>Goodman v. Lee</u>, 988 F.2d 619 (5th Cir.1993)). "Reconsideration of an order under Rule 59(e) 'is an extraordinary remedy to be employed sparingly'" due to interests in finality and conservation of judicial resources. <u>Mathis</u>, 312 B.R. 912, 914 (<u>citing</u> <u>Sussman v. Salem, Saxon & Nielsen, P.A.</u>, 153 F.R.D. 689, 694 (M.D. Fla. 1994); <u>accord</u> <u>Taylor Woodrow Construction Corp. v. Sarasota/Manatee Airport Authority</u>, 814 F. Supp. 1072, 1073 (M.D. Fla. 1993)). Motions requesting reconsideration should not seek to re-argue issues already resolved by the court or to raise new arguments. <u>Sanderlin v. Seminole Tribe of Florida</u>, 243 F.3d 1282, 1292 (11th Cir. 2001); <u>Investors Florida</u>, 168 B.R. at 768.

---

[1] The Debtors and VLO requested reconsideration pursuant to Bankruptcy Rules 8002, 9023, and 9024. However, Bankruptcy Rules 8002 and 9024 pertain to the time for filing a notice of appeal, and are, at this stage, inapposite as no such notice has been filed.

[2] Federal Rule of Civil Procedure 59(e), incorporated by Bankruptcy Rule 9023, provides as follows:

  **(e) Motion to Alter or Amend Judgment.** Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment.

VLO first argues it had no notice that the adequacy of its representation of the debtors was an issue and, therefore, it had no opportunity to present evidence. Specifically, VLO argues that, if given better notice, it would have presented evidence of why Mr. DeSantis chose to represent himself in the negotiations over the reaffirmation agreement with CECU rather than relying on his attorneys. VLO now attaches an affidavit submitted by Mr. DeSantis (Doc. No. 65).

In his Affidavit, Mr. DeSantis explains that he and his wife were very satisfied with VLO's services. Mr. DeSantis avers that VLO was always available and responsive, answered any questions he and his wife had regarding their Chapter 7 case, never refused to perform any services, and even provided advice on issues collateral to their bankruptcy case, prior to and post-discharge, exceeding the parameters of their representation agreement with VLO, free of charge.[3]

As to the reaffirmation agreement with CECU, Mr. DeSantis explains that, although he and his wife initially indicated that they intended to reaffirm the debt (Doc. No. 1, p. 38), he and his lawyers together determined reaffirmation was a poor choice because the debt on the vehicles securing the CECU loans was cross-collateralized with an unsecured line of credit. Mr. DeSantis stated that he "was unwilling to reaffirm" but then decided to "handle the matter myself to eliminate the 'middle' man." Mr. DeSantis then wrote a letter to Mr. Trimmier offering to reaffirm the debt on the two cars but not the unsecured loan.

It was this letter that started the confusion. Mr. DeSantis continued to act as his own lawyer for some purposes; VLO represented the debtors for most other purposes. Although, as explained in the Memorandum Opinion, VLO should have sought to withdraw before allowing

---

[3] In VLO's motion for reconsideration, it argued that the firm's attorneys were painted as "rotten people." Although VLO did err and, in this particular instance, acted uncivilly to a fellow lawyer, the Court never intended to convey an overly broad negative characterization of VLO. The firm has practiced for many years in this division with a high level of professionalism demonstrating considerable expertise and concern for its clients. The firm simply made a mistake in this one case.

this type of bifurcated representation to continue, the real problem was that VLO never clearly responded to Mr. Trimmier's request to talk to Mr. DeSantis. VLO could have avoided this entire dispute by simply permitting Mr. Trimmier to contact the debtors directly.

VLO now cannot contend they had no notice that the adequacy of its representation was an issue insofar as the pleadings heard on April 2, 2008, and addressed in the Memorandum Opinion clearly raised the issue. On February 29, 2008, the Court noticed an evidentiary hearing on the following pleadings: (1) CECU's Second Amended Motion to Strike Debtors' Opposition to Motion to Dismiss (Doc. No. 45); (2) Response by Debtors to the Motion to Strike (Doc. No. 29); (3) CECU's Motion for Sanctions (Doc. No. 47); (4) CECU's Motion for Sanctions (Doc. No. 48); (5) Debtors' Response to the First Amended Motion to Strike and Second Amended Motion to Strike (Doc. No. 49); (6) Debtors' Response to Motion for Sanctions (Doc. No. 50); and (7) Debtors' Response to Motion for Sanctions (Doc. No. 51). These pleadings are addressed at length in the Memorandum Opinion and its Appendix. However, a summary review indicates that it was precisely VLO's bifurcated representation of the debtors that caused the confusion,[4] prompted the dispute raised in these pleadings, and resulted in the award of sanctions. Therefore, the Court concludes that VLO had adequate notice of the issues prior to the final hearing and is not entitled to a second opportunity to present its case.

Nor is Mr. DeSantis' belated affidavit "new" evidence. It could have been submitted prior to or during the hearing held in this matter. In re Cleanmaster Industries, Inc., 106 B.R. 628 (B.A.P. 9th Cir. 1989) (where proffered affidavits were available at the time of trial, such cannot

---

[4] Specifically, for example, (i) Debtors' Trial Exhibit 1, debtors' letter to Mr. Trimmier stating "Please be advised that for the purposes of this reaffirmation, we ARE NOT represented by legal counsel as it relates to this particular matter."; (ii) Debtors' Trial Exhibit 2, debtors repeat that they are not represented by counsel with respect to reaffirming CECU's debt; (iii) Doc. No. 24, Exhibit E, Mr. Kenkel's letter to Mr. Trimmier explaining that "this office does not represent the Debtors with respect to the reaffirmation agreement" and refusing to grant consent to Mr. Trimmier to speak with the debtors; (iv) Doc. Nos. 27 and 29, Debtors' Responses to CECU's Motion to Strike Debtors' Opposition to CECU's Motion to Dismiss, erroneously explaining that Bankruptcy Code Section 524 contemplates that represented debtors may choose to represent themselves for reaffirmations, and that Mr. DeSantis elected to represent himself in the reaffirmation matters with CECU.

be considered to be "new," particularly in the absence of any explanation as to why affiants did not testify at the time of trial, accordingly, trial court did not abuse its discretion for declining to consider post-trial affidavits).

However, even if Mr. DeSantis had testified at trial exactly as he testified in his affidavit, the testimony would not have changed the Court's determination that VLO did not fulfill its obligation to fully represent the debtors on the reaffirmation issues with CECU. VLO did a very good job for these debtors and provided a high level of competent legal service.  Doing a good job, however, does not mitigate VLO's duty to follow the Local Rules or to work with opposing counsel by permitting direct client contact when a debtor opts to represent him or herself.  Even though the debtors are very satisfied with their lawyers, VLO still breached the representational obligations causing direct cost and prejudice to CECU. Mr. DeSantis' affidavit is neither new evidence nor testimony, even if considered, that would justify reconsideration.

Second, VLO raises a new legal argument in support of its motion for reconsideration—that CECU lacked "cause" to file the Motion to Dismiss the debtors' bankruptcy case because the debtors effectively had surrendered the vehicles subject to CECU's security interest by asking Mr. Trimmier for instructions for turnover. (Previously, VLO had merely argued that the Motion to Dismiss was "unwarranted"[5] and that it was filed in "bad faith"[6]).

VLO, relying on the decision of In re Cornejo, 342 B.R. 834, 837 (Bankr. M.D. Fla. 2005), now argues that surrender instantaneously occurs as a matter of law when a debtor agrees, or evidences an intent, to make collateral available to a secured creditor and that no physical transfer is required. Thus, because the debtors effectively "surrendered" their interest in the vehicles in Mr. DeSantis' second letter of November 3, 2007, VLO argues CECU had no justifiable reason to file its motion to dismiss because the debtors had complied with their

---

[5] Doc. No. 49, p. 4, ¶ 13.

[6] Doc. No. 18, p. 2, ¶ 7.

obligations pursuant to Bankruptcy Code[7] Section 521.[8] VLO argues that it should not have to pay Mr. Trimmier's fees and costs if he improperly filed the Motion to Dismiss without "cause."

VLO's argument fails on several grounds.    Exactly what constitutes "surrender" admittedly is a subject of some debate because the term is not defined in the Bankruptcy Code.[9] Section 521(a)(2)(B), which was substantially altered by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 enacted after the Cornejo decision,  gives debtors at least 30, and possibly 45 days, to *perform* their stated intentions.    If surrender was automatic or instantaneous, why would debtors have any performance obligations, such as that contemplated by Section 521?    The Court, however, need not define the parameters of what constitutes "surrender" because, here, regardless of which definition is used, confusion existed due to the debtors' own actions.

The debtors did not initially intend to surrender their cars to CECU.  On August 23, 2007, they swore in their Statement of Intentions that they wanted to reaffirm the debts due to CECU (Doc. No. 1, p. 38).   It was only later, in October or November 2007, that they changed their minds and decided to surrender the cars.  CECU prudently and appropriately wanted to clarify the debtors' current position when it asked to speak directly with Mr. DeSantis.  Ironically, if

---

[7] Unless otherwise stated, all references to the "Bankruptcy Code" herein refer to Title 11 of the United States Code.

[8] As the Court explained in its Memorandum Opinion (Doc. No. 61, pp. 4-5), Bankruptcy Code Section 521 requires debtors to file a statement of their intentions with respect to their secured debt obligations within thirty days of the petition date or on or before their Section 341 meeting of creditors, whichever is earlier. 11 U.S.C. § 521(a)(2)(A). Within thirty days after the first date set for the meeting of creditors, with certain exceptions, debtors must perform their stated intentions with respect to the property, i.e., reaffirm, redeem, or surrender the property.  11 U.S.C. § 521(a)(2)(B).

[9] Courts considering the meaning of the term "surrender" have concluded, for different reasons and under different circumstances, that "surrender" is not synonymous with "deliver." In re Cornejo, 342 B.R. 834, 836-837 (Bankr.M.D.Fla.2005) (observing that "The Bankruptcy Code uses the word 'deliver' when turning over physical possession is contemplated" and that "The Code draws a distinction between delivering and surrendering property" and concluding that "The term surrender in 11 U.S.C. § 521(2)(A) was not intended to mean turning over physical possession to the lien holder."); In re Hinson,  352 B.R. 48, 50 (Bankr.E.D.N.C.2006) ("As stated by the Third Circuit in addressing former § 521(2)(B), the provision 'should not be read as mandating that debtors must entirely consummate their stated intention within the 45 days [now 30 days].'" Rather, it "requires the debtor to 'take steps to act on an intention to either retain or surrender.'") (citing In re Price, 370 F.3d 362, 372 (3rd Cir. 2004)); In re Hayes, 376 B.R. 55, 63 (Bankr. D. Mass. 2007) (observing that "what a 'surrender' of property specifically *means* in all instances is a question partially left unanswered" in the [First Circuit]") (emphasis in original).

VLO had permitted Mr. Trimmier to talk to the debtors, a timely surrender could have occurred without VLO's involvement. Unfortunately, VLO refused to authorize any direct contact creating the obstacle that culminated in CECU's decision to file its Motion to Dismiss (Doc. No. 15).

Moreover, VLO raises this new legal argument too late. The Court cannot decide an issue now that was not raised at the final evidentiary hearing. In re Investors Florida Aggressive Growth Fund, Ltd., 168 B.R. 760, 768 (Bankr. N.D. Fla. 1994). ("A motion for reconsideration is not a vehicle to reargue issues resolved by the court's decision or to make additional argument on matters not previously raised by counsel.") The newly asserted legal argument cannot provide a basis for reconsideration at this late date.

In this case, there is no change in controlling law, no new evidence, and no errors of fact or law resulting in manifest injustice necessary to merit reconsideration of the Court's earlier ruling. VLO's Motion for Reconsideration is denied (Doc. No. 65).

## Disqualification is Not Merited

CECU next seeks to disqualify VLO from any further representation of the debtors because, for a short time, the law firm represented CECU in unrelated commercial litigation. VLO filed this Chapter 7 bankruptcy case on behalf of the debtors on August 23, 2007. About one year later, on June 25, 2008, VLO agreed to represent CECU in a lending matter before the Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida, Case No. 05-2008-CA-34954, styled as JP Morgan Mortgage Acquisition Corp. vs. Charles McClure (the "Brevard Case"). VLO started representing CECU after all evidentiary hearings in this case had concluded but before the Court issued it's Memorandum Opinion (Doc. No. 61) ruling on the pending issues. CECU, without introducing any evidentiary support, argues that VLO possibly may have obtained confidential or privileged information about CECU in the Brevard Case which ethically prohibits VLO from further representing the debtors' interests adverse to

CECU's interests here. CECU neither knew of nor consented to VLO simultaneously representing its interests in the Brevard Case while also representing the debtors in this case.[10] By October 28, 2008, VLO was no longer representing CECU in the Brevard Case. CECU alleges it terminated VLO's representation (Doc. No. 84, p.11); however, at the hearing, Volk stated that VLO withdrew from representing CECU. In any event, VLO no longer represents both CECU and the debtors.

Rule 4-1.7 of the Florida Rules of Professional Conduct governs an attorney's representation of current clients with adverse interests, and provides that, with certain exceptions, an attorney shall not represent a client if that representation will be directly adverse to another client, or there is a substantial risk that the representation of a client will be materially limited by the attorney's responsibilities to another client, former client, a third person, or by the attorney's personal interests. F.S.A. Bar Rule 4-1.7(a).  Notwithstanding a conflict of interest, an attorney may represent a client if the attorney reasonably believes he or she can competently and diligently represent both clients, the attorney does not have to assert an interest adverse to either client in representing both clients in the same proceeding, and the clients consent. F.S.A. Bar Rule 4-1.7(b). Mr. Trimmier emphasizes that the Comment to Rule 4-1.7 states that "a lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated."

Other than the open issue of determining the amount of sanctions awarded to CECU, nothing remains pending in this bankruptcy case.  On February 7, 2008, the Chapter 7 trustee filed a report certifying that there would be no distributions and that the estate was fully administered.  The debtors received a discharge of their debts on April 7, 2008 (Doc. No. 59), and the automatic stay is no longer in effect. 11 U.S.C. § 362(c)(2)(C). Thus, from a practical

---

[10] Apparently, on approximately September 25, 2008, VLO submitted a notice of deposition on behalf of CECU in the Brevard Case, just days after filing the Motion for Reconsideration and later serving it on most or all of the board of directors for CECU, on September 23, 2008 (Doc. Nos. 65, 67, and 69).

standpoint, there is little left for VLO to accomplish on the debtors' behalf.  At this late date, disqualifying VLO would accomplish little, if anything.

Moreover, because CECU is no longer a current client of VLO, there is no risk of prejudice to one client at the expense of the other.  VLO can competently and diligently represent the debtors through the completion of this case without any harm to CECU.  Neither party presented any evidence that VLO obtained any confidential or privileged information that would give it an upper hand or improper advantage in concluding this last disputed issue over the amount of sanctions.  Nothing would be served by disqualification other than further expense and delay. The Motion for Disqualification is denied (Doc. No.  78).

CECU Is Entitled to an Award of
Fees and Costs without Further Discovery or Delay

The Court in its Memorandum Opinion awarded sanctions against VLO in the form of attorney fees and costs for the extra expense CECU reasonably incurred due to the problems VLO created by allowing a bifurcated representation of the debtors to complicate the debtors' surrender of their cars to CECU.  In order to appropriately assess the amount of sanctions, CECU was directed to submit an affidavit outlining the normal attorney fee for a routine reaffirmation agreement as well as all the invoices and other payment information relating to its agreement with Mr. Trimmier for services provided in this case.   CECU promptly filed this information (Doc. No. 71) detailing that Mr. Trimmier spent $650.93 in costs and 74.25 hours of time totaling $17,254.69[11] between December 7, 2007, when Trimmier began drafting CECU's motion to dismiss, and the time of the hearing on the various matters held on April 2, 2008. [12]

---

[11] The fees for Mr. Trimmier's time totaled $23,006.25. However, in accordance with CECU's retainer agreement with Trimmier, CECU receives a 25 percent discount, bringing the total to $17,254.69.

[12] The time entry for May 8, 2008, shows 8 hours for time expended in connection with the hearing, including travel. However, the hearing in this matter was held on April 2, 2008. The Court believes the date of May 8 is merely a scrivener's error and that it should have read April 2.

Typically, Mr. Trimmier would earn a flat fee of $199.50 for filing a proof of claim and handling routine matters for CECU in a Chapter 7 bankruptcy case. He could earn an additional $299 if he negotiated and filed a reaffirmation agreement with the debtor. So, in a routine case involving the reaffirmation of a car loan, Mr. Trimmier would earn approximately $500 from CECU. In contrast, in this case, he has billed CECU approximately $17,000 and incurred costs of $650.93, largely consisting of travel expenses. To date, CECU has paid a total of $238.02 to Trimmier for work performed in connection with this bankruptcy case (Doc. No. 71, p. 1, ¶ 3). Thus, the vast majority of Mr. Trimmier's fees and costs are unpaid.[13]

VLO objects to the fees requested by Mr. Trimmier, seeks further discovery, and another evidentiary hearing to contest the fees. VLO's primary objection is that Mr. Trimmier aggressively escalated this relatively simple dispute over the surrender of two cars into a confrontation of nuclear proportion. VLO asserts CECU filed multiple pleadings raising numerous, extraneous, emotional arguments simply to make VLO look unethical, accelerating the hostility between the parties.

David Volk, an attorney at VLO, appeared at the recent hearing on the firm's motion for reconsideration. Mr. Volk, objecting to the fees, was distraught over the unfortunate lack of civility between the attorneys, agreeing in retrospect that VLO could have done better, but also arguing that the door of civility swings both ways. Mr. Volk argued that Mr. Trimmier should shoulder some of the blame for the protracted difficulties in this case, and he could not, in his 20 plus year career as an attorney, recall such problems in returning a vehicle to a secured creditor.

The Court agrees that the fees requested by Mr. Trimmier are unreasonable and excessive given the simplicity of the issues raised in this dispute. Here, the debtors did not return two cars to CECU. Mr. Trimmier was unable to clear up the confusion because VLO allowed the debtors

---

[13] Mr. Trimmier also filed a Statement of Additional Attorney Time (Doc. No. 75) seeking fees for 9 hours of time he spent after the Memorandum Opinion was entered. He spent approximately 3 hours responding to VLO's motion for reconsideration and approximately 6 hours responding to an inquiry from CECU's Board of Directors.

to act *pro se* in their dealings with CECU but refused to allow Mr. Trimmier to speak directly with Mr. DeSantis.  Certainly, VLO is responsible for these costs that CECU otherwise would pay.

However, VLO should not be responsible for all of the extraordinarily high fees sought by Mr. Trimmier. Rather, both sides bear some responsibility.  Mr. Trimmier expended a significant amount of time elevating a simple dispute into an issue of over-inflated importance. For example, CECU filed multiple motions to strike, all of which were denied (Doc. Nos. 24, 33, and 45).  Therefore, the Court finds that much of these additional fees and costs simply are not justified, need not have been incurred, and are not awardable as sanctions. Although VLO clearly made a mistake in this case, Mr. Trimmier took advantage of this error and expended an inordinate amount of attorney and judicial time on this relatively simple problem.

Because Mr. Trimmier's invoice to CECU inextricably intertwines the appropriate and compensable time he spent trying to arrange the surrender of the two cars with all of the extraneous and unnecessary legal work he performed, the Court cannot distinguish between entries reflecting appropriate services from unreasonable ones listed on Mr. Trimmier's invoice to CECU. In Grant v. George Schumann Tire & Battery Co., 908 F.2d 874, 877-878 (11th Cir. 1990), the Court of Appeals for the Eleventh Circuit instructed that, in considering the reasonableness of attorney's fees, a judge must consider: 1) the nature and extent of the services rendered; 2) the value of those services; and 3) the factors laid out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974). A judge must explain how the Johnson factors affect the award of fees. Grant, 908 F.2d at 878 (citing Matter of First Colonial Corp. of America, 544 F.2d 1291, 1299-1300 (5th Cir. 1977), *cert. denied sub nom.*, Baddock v. American Benefit Life Ins. Co., 431 U.S. 904 (1977)). The Johnson factors include: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the degree of skill necessary to serve the client properly, (4) the attorney's inability to accept other employment

because of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the relief or results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the attorney's professional relationship with the client, and (12) awards in similar cases. Johnson, 488 F.2d at 717-19.

Certainly, Mr. Trimmier provided valuable services to CECU. Although the heated communications between the parties were certainly difficult, the real issues presented in the case—reaffirmation and the later surrender of two cars—were not novel or difficult. Mr. Trimmier did not have to decline other employment to work on this case.  No pressing time limitations existed. At its inception, the case was routine and not undesirable. Mr. Trimmier is an experienced attorney who has represented CECU in matters similar to those presented in this case for some length of time. Therefore, the Court finds that Mr. Trimmier's hourly rate of $305 is appropriate. However, the time he spent on this case, 74.25 hours, is excessive. Accordingly, the Court shall limit the sanctions awarded against VLO to paying for only 10 hours of Mr. Trimmier's time as follows: VLO shall pay CECU for 10 hours of Mr. Trimmier's time multiplied by his hourly rate of $305 for a total of $3,050, less the 25 percent discount Mr. Trimmier gives to CECU ($3,050 x .25 = $762.50) for total fees equaling $2,287.50 ($3,050 - $762.50 = $2,287.50). The costs for which Mr. Trimmier seeks reimbursement, $650.93, are appropriate and will be allowed in full.  In a routine Chapter 7 case involving reaffirmation, CECU typically pays Mr. Trimmier approximately $498.50. Deducting this amount from the total amount of fees and costs ($2,938.43) VLO must pay CECU for its errors in the case yields a total sanctions award of $2,439.93.

Accordingly, VLO's Objection (Doc. No. 81) is partially sustained. The Court finds that $2,439.93 is reasonable for Mr. Trimmier's costs incurred and services provided to CECU

relating to VLO's error in this case.  The Court will award sanctions against VLO in that amount.

VLO is directed to pay $2,439.93 to CECU within 30 days of the entry of this order.

VLO asks to take additional discovery on Mr. Trimmier's legal fees.  The Court needs no

other information to rule and would not benefit from any further discovery or argument.

Additional discovery would simply prolong this matter and further increase the already excessive

legal fees incurred.  As such, VLO's request for additional discovery and another hearing is

denied.

Separate orders consistent with this Memorandum Opinion shall be entered

simultaneously herewith.

DONE AND ORDERED on January 8, 2009.

KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies provided to:

Debtors:  Victor Anthony DeSantis, Dana Jo DeSantis, 1513 Laramie Circle, Melbourne, FL 32940

Debtors' Attorney: David J. Volk, Volk Law Offices, PA, 700 South Babcock Street, Suite 402, Melbourne, FL  32901

Community Educators' Credit Union, c/o Chip Trimmier, Trimmier LLC, P.O. Box 1885, Birmingham, Alabama  35201

Trustee:  Marie E. Henkel, 3560 South Magnolia Avenue, Orlando, FL  32806

U.S. Trustee, 135 W. Central Blvd., Suite 620, Orlando, FL  32801